UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURIE PARKE,

      Plaintiff,

v.                                                                                    Case No: 6:23-cv-2221-JSS-NWH

DELTA AIR LINES, INC.,

      Defendant.

_____/

**ORDER**

Defendant, Delta Air Lines, Inc., moved to compel Plaintiff to provide amended discovery responses, appear for a third deposition, and provide her cell phone for forensic imaging. (Dkt. 199.) Plaintiff, Laurie Parke, opposed the motion. (Dkt. 200.) The magistrate judge assigned to this case granted Defendant's motion to compel in part and denied it in part. (Dkt. 208.) Plaintiff objects to the order in part. (*See* Dkt. 209.) Upon consideration, and for the reasons outlined below, the court overrules Plaintiff's objections to the magistrate judge's order.

**BACKGROUND**

Plaintiff was employed by Defendant as a flight attendant for over twenty-four years, including during the COVID-19 pandemic. (*See* Dkt. 109 ¶¶ 8–21.) Pursuant to federal regulations, Defendant adopted policies requiring its staff to wear masks and to be vaccinated. (*See id.* ¶ 11.) Plaintiff opposed the federal mandates and, by extension, Defendant's policies. (*See id.*) Indeed, Plaintiff "participated in a private

Telegram chat group composed exclusively of airline employees" dedicated to discussing their "opposition to COVID-19 mask mandates." (*Id.*)

During a layover in April 2022, "Plaintiff posted a photograph to the Telegram group depicting a basket of candy and an informational flyer expressing opposition to mask mandates." (*Id.* ¶¶ 9–10.) Later that day, a customer service agent and an in-flight supervisor, each working for Defendant, confronted Plaintiff on her flight. (*Id.* ¶ 13.) During the confrontation, they showed Plaintiff a screenshot of the photograph she had posted to the Telegraph group chat and accused her of holding a sign opposing mask mandates. (*Id.* ¶¶ 9–10, 13.) Further, in full view of passengers who had already begun boarding, the customer service agent and the in-flight supervisor began questioning Plaintiff about her failure to wear a mask. (*Id.* ¶ 14.) After some debate about the continuing validity of the federal guidelines, Plaintiff agreed to wear a mask. (*Id.* ¶¶ 14–15.) Yet this did not end the matter. When the flight reached its destination, Plaintiff was confronted by two more in-flight supervisors. (*Id.* ¶ 17.) Again, Plaintiff and Defendant's staff debated the continuing validity of the federal guidelines and a recent court ruling's impact on Defendant's internal policies. (*Id.*)

According to the complaint, Plaintiff then experienced "increased scrutiny and [was] targeted for minor infractions." (*Id.* ¶ 26.) Soon thereafter, she was suspended. (*Id.* ¶ 18.) As a result, Plaintiff was "removed from subsequent flight rotations, placed on inactive status, and deprived of her regular income." (*Id.*) In response, "Plaintiff submitted internal reports objecting to" her fellow employees' purported surveillance

of the Telegram group and their attempts to confront Plaintiff about her refusal to obey Defendant's policy requiring her to wear a mask.  (*Id.* ¶ 20.)  According to Plaintiff, Defendant refused to address her concerns or to explain why she had been suspended. (*Id.* ¶¶ 18, 20.)  Instead, Defendant fired Plaintiff for alleged "insubordination and policy violations."  (*Id.* ¶ 21.)  Considering the timeline of events, Plaintiff believes that her suspension and termination emanated from her "objections to Defendant's wage deductions, disparate treatment of unvaccinated employees, and failure to accommodate her medical condition."  (*See id.* ¶¶ 18, 23.)

After Plaintiff filed suit, Defendant requested that she produce, among other things, all her correspondence relating to her employment, her "interaction[s] or work with" her co-workers "during the course of [her] employment," and "any facts or allegations in this [l]awsuit."  (Dkt. 155-2 at 38.)  Defendant then took Plaintiff's deposition. (*See* Dkt. 155-3.)  During her first deposition, Plaintiff purportedly testified that she "possessed several records responsive to Defendant's discovery requests . . ., which she had failed to provide or supplement."  (Dkt. 155 at 3.)  According to Defendant, Plaintiff "admitted that she failed to exhaustively search for several additional categories of records," and, when asked about other requests, "failed to confirm that there were no responsive documents within her possession, custody, or control." (*See id.*)  Accordingly, Defendant moved to compel Plaintiff to supplement her discovery responses and to attend a second deposition.  (*See id. passim.*)  The magistrate judge granted Defendant's motion.  (*See* Dkt. 179.)

During Plaintiff's second deposition, Defendant asked Plaintiff to describe her

efforts to comply with the court's order directing her to supplement her discovery responses. (*See* Dkt. 199-1 at 9–10, 14–23, 27, 34, 36–38, 40–45, 48–50.) Plaintiff maintained that she had fully responded to Defendant's discovery requests, while also stating that she would not provide communications with friends and family concerning her employment or this lawsuit. (*See id.* at 9–10, 14–16, 18–22, 25–27, 31, 34–35, 38, 40–43, 49–50, 52, 55, 62, 65, 86.) When she was pressed about this answer, Plaintiff explained:

> My personal friends and relatives that I communicate [with] in any regard are private and personal to me, and *they are not subject to any discovery for you*. That I've spoken to anyone in my family or any of my friends about anything is my own personal and private conversations, and *I do not have to divulge those*. . . It's my right to privacy. It's my friends and my family, and I do not have to discuss it. It's privileged between me and them.

(*Id.* at 16 (emphasis added).) Plaintiff further testified that she would not search her messages for responsive communications:

> Q. Did you search for information relevant or responsive to [Defendant] and your claims in this case in your text messages?
>
> A. They're private conversations, *so no, I did not search them* because they're my private conversations.
>
> Q. What did you do to search your emails in response -- Strike that. How did you search your emails, if at all?
>
> A. I don't have emails pertaining to any Telegram or private chats. *And any emails between my brother and anyone else that I'm friends with are private, so I don't need to search them because I'm not going to provide those*. They're my private conversations. And when I was pro se, they were still private. And I'm not on any kind of order where I'm not

> allowed to talk about my situation with anybody. It's my personal thing, and they're my family members and my friends, and I'm allowed to talk about it with anybody that I choose to. And they're private conversations, private emails.

(*Id.* at 17 (emphasis added).)  Plaintiff also acknowledged that at least some of the communications that she is withholding are responsive to Defendant's requests.  (*Id.* at 10, 36–37 ("Everything else is private and personal items *that you want*. . . . When I was pro se, I had friends and family helping me . . . and I do not have to provide any of those personal, private information, emails, texts, anything to you." (emphasis added)).

After several hours of questioning, Plaintiff unilaterally terminated her second deposition.  (*See id.* at 86–87.)  Accordingly, Defendant moved to compel Plaintiff to "complete a reasonably diligent search of all records in her possession, custody, and control, [to] amend her discovery responses accordingly, and [to] appear for a [third] deposition to address [her] amended responses."  (Dkt. 199 at 2–3.)  "[T]o enable an objective and fair examination" of Plaintiff, Defendant also moved to compel Plaintiff to submit her cell phone for forensic imaging.  (*Id.* at 1, 3; *see also* Dkt. 199-5.)

At the hearing on Defendant's motion, Plaintiff told the court that she searched her cell phone, emails, and Telegram messages, "and produced everything that was required to be produced."  (Dkt. 210 at 36.)  To show that she made a good-faith effort to comply with her discovery obligations, Plaintiff offered a declaration, which stated that she "conducted a diligent, good-faith search for documents responsive to Defendant's discovery requests," after which she produced "all responsive, non-

privileged documents" that were in her possession, custody, or control. (*See* Dkt. 200-1; *see also* Dkt. 162-1.) Yet Plaintiff qualified this statement, both in her declaration and at the hearing, stating that she produced all the responsive information that she had, "*except for private family*, financial, [and] health information." (Dkt. 210 at 37 (emphasis added); *see* Dkt. 200-1 ¶ 4; *see also* Dkt. 162-1 ¶ 3 ("I have not produced purely personal communications with friends or family . . . that do not concern my employment with or claims against [Defendant].").)

According to Plaintiff, she alone decided what was, and was not, responsive to Defendant's requests. (*See* Dkt. 210 at 36–37 (acknowledging that Plaintiff made her own decisions about what documents and communications were responsive).) While Plaintiff's declaration does not articulate how she decided what to produce and what to withhold, (*see* Dkts. 200-1; 162-1), she testified that her decision making was largely guided by what she considered to be private, (*see* Dkt. 199-1 at 9–10, 14–16, 18–22, 25–27, 31, 34–35, 38, 40–43, 49–50, 52, 55, 62, 65, 86). Complicating matters, however, Plaintiff has not produced a privilege log or certified that, despite her objections, she has produced all responsive documents, regardless of any applicable privileges. (Dkt. 210 at 44.)

Given Plaintiff's testimony that she would not search, let alone provide, communications concerning her employment and this lawsuit, (*see* Dkt. 199-1 at 9–10, 14–16, 18–21, 27, 34, 38, 40–42, 49–50, 86), and her conflicting representations at the hearing, (*see* Dkt. 210 at 44), the magistrate judge granted Defendant's motion to compel, (*see* Dkt. 208). Plaintiff objects to the portion of the magistrate judge's order

"authorizing forensic imaging of [her] personal cell[ ]phone." (*See* Dkt. 209.)

## APPLICABLE STANDARDS

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Accordingly, "a civil litigant is generally entitled to 'any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quotation omitted); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). "This includes discovery of documents located in available electronic systems, deleted emails, and computer files." *Classic Soft Trim, Inc. v. Albert*, No. 618CV1237ORL78GJK, 2020 WL 6731027, at \*2 (M.D. Fla. Sept. 2, 2020); *accord Robinson v. Payne*, No. 6:23-CV-1313-PGB-LHP, 2025 WL 2687185, at \*2 (M.D. Fla. Sept. 19, 2025) ("Discovery into electronically stored information, including forensic examinations, is subject to the scope of discovery under Rule 26(b).").

"A magistrate judge is afforded broad discretion in issuing nondispositive pretrial orders related to discovery." *Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013); *accord Tracy P. v. Sarasota County*, No. 8:05CV927T27EAJ, 2007 WL 1364381, at \*2 (M.D. Fla. May 9, 2007) (same); *see* Local Rule 1.02 (authorizing magistrate judges to supervise and determine pretrial proceedings and motions in civil cases, including discovery motions). When a magistrate judge issues

an order on such a motion, the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A); *see Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020) ("[A] district court reviews a magistrate judge's ruling on non-dispositive matters under the clearly-erroneous or contrary-to-law standard."); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981) ("Pretrial orders of a magistrate . . . are reviewable under the clearly erroneous and contrary to law standard; they are not subject to a de novo determination as are a magistrate's proposed findings and recommendations."). The party objecting to a magistrate judge's order must show that the ruling is clearly erroneous or is contrary to law. *Howard v. Hartford Life & Accident Ins. Co.*, 769 F. Supp. 2d 1366, 1372 (M.D. Fla. 2011) ("Under Rule 72(a), a [party] may object to a nondispositive order entered by a magistrate judge, but in order to prevail, it must establish that the order is clearly erroneous or contrary to law.").

Clear error is a highly deferential standard of review that is rarely met. *See Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) ("Clear error is a highly deferential standard of review."); *Cox Enters., Inc. v. News- J. Corp.*, 794 F.3d 1259, 1272 n.92 (11th Cir. 2015) ("To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." (quotation omitted)). "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quotation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574. "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *A.R. v. Dudek*, 151 F. Supp. 3d 1309, 1312 (S.D. Fla. Dec. 18, 2015) (quotation omitted). Accordingly, "[t]he standard for overturning a [m]agistrate [j]udge's [o]rder is a very difficult one to meet." *NAACP v. Florida*, 122 F. Supp. 2d 1335, 1337 (M.D. Fla. 2000).

## ANALYSIS

Defendant moved to compel Plaintiff to provide amended discovery responses, appear for a third deposition, and submit her cell phone for forensic imaging. (Dkt. 199 at 2–3.) Plaintiff opposed the motion, asserting that she had produced all the responsive, non-privileged documents that she had. (Dkt. 200 at 1–2.) Plaintiff also argued that Defendant's request to forensically image her phone was "not supported by the record." (*Id.* at 3.) The magistrate judge held a hearing on Defendant's motion, after which he ordered Plaintiff to supplement her discovery responses, produce a privilege log identifying the documents that she has withheld, and submit her cell phone for forensic imaging. (Dkts. 208, 210.) Plaintiff objects to the extent that the magistrate judge ordered her to submit her cell phone for forensic imaging. (*See* Dkt. 209.) The court therefore limits its discussion to that portion of the magistrate judge's order.

Plaintiff does not assert that the magistrate judge's order was clearly erroneous

or contrary to law, nor does she cite any case law to that effect. (*See id.*) Rather, Plaintiff objects to the proportionality of the remedy that the magistrate judge has ordered. (*See id.* at 6–7.) According to Plaintiff, the magistrate judge ordered forensic imaging of her cell phone because of a perceived "ambiguity between [her] declaration and [her] deposition testimony regarding the scope of her search and production." (*Id.* at 1–2.) To clarify the alleged ambiguity, Plaintiff argues that the magistrate judge should have ordered her to either clarify the conflicting representations in her deposition testimony and her declaration or to provide a more "targeted certification" concerning her efforts to search for responsive documents. (*Id.* at 2.)

To start, Plaintiff consistently testified during her second deposition that she did not search her text messages or emails for responsive communications because, in her opinion, they were not discoverable. (*See* Dkt. 199-1 at 9–10, 14–16, 18–22, 25–27, 31, 34–35, 38, 40–43, 49–50, 52, 55, 62, 65, 86.) Accordingly, Plaintiff's declaration that she purportedly "conducted a diligent, good-faith search" of her cell phone and personal email account before producing "all responsive, non-privileged documents" does not create an ambiguity, but a direct conflict, in her testimony. (*See* Dkt. 200-1 ¶¶ 2–3; 162-1 ¶¶ 2–3.) For that reason, the magistrate judge could have disregarded Plaintiff's declaration. *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016) (explaining that a court may disregard an affidavit that flatly contradicts the affiant's deposition testimony); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 (11th Cir. 2003) (explaining that courts may disregard an affidavit when it is directly contradicted by the affiant's deposition testimony). Nonetheless, the

magistrate judge considered Plaintiff's declaration in performing the Rule 26 proportionality analysis.

In the context of discovery, proportionality is determined by considering factors such as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *B.T. v. Battle*, No. 21-10318, 2021 WL 4147087, at *3 (11th Cir. Sept. 13, 2021) (quoting Fed. R. Civ. P. 26(b)(1)). At the hearing, Defendant argued that the documents and communications that Plaintiff is withholding are paramount to resolving this case, as Plaintiff's participation in the Telegram chat is central to each of her causes of action. (*See id.* at 25–28.) Because Plaintiff is withholding communications that are only available on her cell phone, Defendant argued that the relative access of the parties favors discovery here, as Defendant cannot obtain them through other means. (*See id.*) Although Plaintiff argued that forensic imaging would be disproportionate to the needs of this case, she did not explain why. (*See id.* at 28–45.) Accordingly, the magistrate judge concluded that the proportionality factors favor Defendant's request. (*See id.* at 52–62.) To ensure that the burden of the imaging did not outweigh its benefit, the magistrate judge ordered Defendant not only to pay for the examination but also directed Defendant to retain an examiner who could perform the analysis "in the manner least inconvenient to Plaintiff." (Dkt. 208 at 2; *see* Dkt. 210 at 39.)

Still, Plaintiff asserts that the magistrate judge did not adequately consider her

privacy interests when he granted Defendant's motion.  (*See* Dkt. 209 at 2–3.)  To be sure, courts must consider "the privacy interest of the party whose device[] [is] to be examined," when deciding whether to permit forensic imaging.  *Garrett v. Univ. of S. Fla. Bd. of Trs.*, No. 8:17-CV-2874-T-23AAS, 2018 WL 4383054, at *2 (M.D. Fla. Sept. 14, 2018).  But Plaintiff's privacy is only one factor that the court must consider in deciding whether to order forensic imaging of her cell phone.  *See id.*  Indeed, when determining whether to permit the forensic examination of an electronic device, courts must also evaluate whether the party whose device is to be examined has complied with prior discovery requests and whether they have withheld or refused to search for responsive discovery.  *Id.*; *see In re Ford Motor Co.*, 345 F.3d 1315, 1316–17 (11th Cir. 2003) (noting that there may be "times—perhaps due to improper conduct on the part of the responding party—[that] the requesting party itself may need to [search]" the responding party's electronically stored data, such as when there is a finding that the responding party has not complied with the discovery rules); *Classic Soft Trim, Inc.*, 2020 WL 6731027, at *2 ("When determining whether a forensic examination is warranted, the [c]ourt considers both the privacy interests of the parties whose devices are to be examined and, also, whether the parties withheld requested discovery, will not search for requested discovery, and the extent to which the parties complied with past discovery requests."); *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2014 WL 11498061, at *4 (S.D. Fla. Dec. 30, 2014) (explaining that courts will order a forensic examination of an electronic device when there is "a strong showing that [a] party . . . intentionally thwarted discovery," which a party does "by violating court orders to

- 12 -

produce, purposefully hid[ing] responsive documents and fail[ing] to initiate a reasonable process to search for, collect and produce responsive [information]"); *Klayman v. City Pages*, No. 5:13-CV-143-OC-22PRL, 2014 WL 5426515, at *5 (M.D. Fla. Oct. 22, 2014) (explaining that before ordering the forensic examination of an electronic device, the court "should consider whether the responding party has withheld requested information, whether the responding party is unable or unwilling to search for the requested information, and the extent to which the responding party has complied with discovery requests"); *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 686 (S.D. Fla. 2012) (permitting forensic examination of an electronic device because it appeared that the party had not taken reasonable efforts to produce electronically stored information when responding to requests for discovery).

At the hearing, Plaintiff argued that her phone is "her life," and that allowing Defendant to forensically image it would expose "financial information, health information, [and other] private information that has no bearing on this case." (*See* Dkt. 210 at 34, 40, 55, 58.) As before, Plaintiff did not develop this argument. (*See id. passim*.) Plaintiff's objections to the magistrate judge's order on this basis are similarly defective, as she cites several general principles without tying them to the facts of her case. (*See* Dkt. 209 at 2–3.) Ultimately, the cursory nature of Plaintiff's analysis on this point is fatal to her argument, as a party abandons issues that it raises in passing, asserts perfunctorily, buries within its brief, or uses merely to support other arguments. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014); *see Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (explaining that "conclusive[] or general

objections [to a magistrate judge's order] need not be considered by the district court.").

In any case, the magistrate judge considered Plaintiff's privacy interests; he found, however, that they were outweighed by her noncompliance with the court's orders and her refusal to search for responsive discovery. (*See* Dkt. 210 at 42–48.) As discussed, the magistrate judge ordered Plaintiff to supplement her discovery responses and to attend a second deposition to answer questions concerning her "efforts to conduct a diligent search of her records in response to Defendant's discovery requests," after she purportedly testified that she had not performed an exhaustive search of her records and was withholding responsive documents and communications.   (*See* Dkt. 155 at 3, 5; Dkt. 179.)  Despite the court's order, Plaintiff testified during her second deposition that she did not search her emails or text messages for responsive communications. (*See* Dkt. 199-1 at 9–10, 14–21, 27, 34, 37–38, 40–42, 49–50, 86.)  On these facts, Plaintiff has not met her heavy burden to show that the magistrate judge's order was clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a); *see Holton*, 425 F.3d at 1350.

Finally, Plaintiff argues that the magistrate judge's order does not include sufficient safeguards to protect her privacy. (*See* Dkt. 209 at 2–3.)  According to Plaintiff, the order's instruction that the parties must "confer and agree upon the parameters of the search . . .  consistent with the pending requests for production," along with its guarantee that Plaintiff alone shall review the results to identify any privileged matters, which she may withhold, (*see* Dkt. 208 at 2), do not sufficiently

protect her right to privacy, as "every photo, message, file, and associated metadata, relevant or not," will still be copied, (Dkt. 209 at 2).  Again, Plaintiff does not develop this argument beyond her conclusory objection, thereby waiving the argument.  (*See id.*)  *See Sapuppo*, 739 F.3d at 681–82; *Marsden*, 847 F.2d at 1548; *see also In re Ford Motor Co.*, 345 F.3d at 1316–17 (noting that there may be times that a party may need to search its adversaries' electronically stored data, such as when they have not complied with the discovery rules).

Plaintiff does cite two Florida state court opinions for the proposition that the order's safeguards will not sufficiently protect her right to privacy. (Dkt. 209 at 2 (*citing Roque v. Swezy*, 390 So. 3d 193 (Fla. Dist. Ct. App. 2024); and *Halikoytakis v. Future Motion, Inc.*, 410 So. 3d 1242 (Fla. Dist. Ct. App. 2025).)  However, the decisions that she cites are inapposite for several reasons.  To begin, this is a diversity case, so procedural issues—like the scope of discovery—are governed by federal, not state, law. *Bearint v. Dorell Juv.*, 389 F.3d 1339, 1353 (11th Cir. 2004) (explaining that "it is federal law, and not state law, that controls discovery in diversity actions").  This distinction matters because the decisions in *Halikoytakis* and *Roque* are grounded in the right to privacy secured by the Florida Constitution, *see Halikoytakis*, 410 So. 3d at 1245; *Roque*, 390 So. 3d at 196, which "is broader in scope than the right of privacy implied under the federal constitution," *State v. Conforti*, 688 So. 2d 350, 357 (Fla. Dist. Ct. App. 1997); *see Wharran v. Morgan*, 351 So. 3d 632, 636 (Fla. Dist. Ct. App. 2022) ("Although the discovery rules are liberal, the Florida Constitution contains an express

- 15 -

right to privacy. . . . The fundamental right to privacy in the Florida Constitution is much broader in scope than that of the Federal Constitution."); *Berkeley v. Eisen*, 699 So. 2d 789, 790 (Fla. Dist. Ct. App. 1997) ("[T]he Florida Constitution specifically provides a constitutional right of privacy broader in scope than the protection provided in the United States Constitution. Court orders compelling discovery constitute state action that may impinge on constitutional rights, including the constitutional right of privacy." (citations omitted)).  Plaintiff does not argue, let alone show, that the Florida Constitution would govern discovery in federal court.  (*See* Dkt. 209.)  *Westgate Resorts, Ltd. v. Castle L. Grp., P.C.*, No. 617CV1063ORL31DCI, 2018 WL 11252097, at *1 (M.D. Fla. Mar. 7, 2018) (concluding that the right to privacy guaranteed by the Florida Constitution "would not apply in a discovery dispute in federal court").  More importantly, given the brevity of her analysis, Plaintiff has not shown that her right to privacy secured by the United States and Florida Constitutions precludes the forensic imaging ordered here.  (*See* Dkt. 209.)  *See Sapuppo*, 739 F.3d at 681–82; *Rutledge v. NCL (Bahamas), Ltd.*, 464 F. App'x 825, 830 (11th Cir. 2012) (concluding that a party waived the argument that the district court abused its discretion when it simply concluded that the lower court had erred without explaining how the court had abused its discretion); *NLRB v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *see also Garrett*, 2018 WL 4383054, at *2 (explaining when forensic imaging of an electronic device will be permitted in

federal court); *Antico v. Sindt Trucking, Inc.*, 148 So. 3d 163, 166 (Fla. Dist. Ct. App. 2014) (explaining that Florida courts allow for the inspection of an electronic device if: (1) the evidence shows that the party has tried to thwart discovery, (2) "the device likely contained the requested information," and (3) "no less intrusive means existed to obtain the requested information.").

In any case, the decisions in *Halikoytakis* and *Roque* are poor analogues for the present case. In *Roque*, the defendant moved to forensically image the plaintiff's cell phone at the outset of discovery, arguing that it would be "quicker and more efficient" than traditional discovery. *See Roque*, 390 So. 3d at 195. Indeed, the defendant "offered no legitimate justification or need for such intrusive discovery." *Id.* Nonetheless, the trial court granted the defendant's motion for forensic review. *See id.* The appellate court reversed, holding that forensic imaging "cannot be justified merely because it is the quickest and most efficient method to obtain the discovery sought." *Id.* at 198. In reaching this conclusion, the court stressed that the defendant had not presented evidence to suggest that the plaintiff had not "prevented or thwarted discovery in any way." *Id.* at 196. Still, the court acknowledged that the defendant was "not altogether foreclosed from seeking electronically stored information on [the plaintiff's] cellphone," only that the trial court would need to balance the competing interests of the parties. *See id.*

*Halikoytakis* is similarly distinguishable. In that case, the defendant moved to forensically image the plaintiff's cell phone after he testified that he did not have any

communications relevant to the case or video of the incident at issue. *Halikoytakis*, 410 So. 3d at 1242. In moving to forensically image the plaintiff's cell phone, the defendant argued that "[c]ontemporary experience demonstrates that people communicate and use their mobile phones to record the most minute details of their lives," and "that something as important as a personal injury that results in a lawsuit would be something that a person would discuss." *Id.* at 1243. The trial court granted the motion to compel, to permit the defendant to explore what information "may be available" on the plaintiff's phone. *Id.* at 1245. The appellate court reversed, as the trial court had not found that relevant information was likely to be on the plaintiff's cell phone nor concluded that there was evidence "to suggest that [he had] thwarted discovery." *Id.* at 1247–48. Those are not the facts of this case. (Dkt. 199-1 at 37–38 ("Like I've said a thousand times, family and friends, private and personal, and *I'm not providing those. . . .* They're my privacy. I do not have to divulge private and personal things to you, *and I will not*." (emphasis added).)

At bottom, Plaintiff has not met her heavy burden to show that the magistrate judge's ruling was clearly erroneous or contrary to law. *Howard*, 769 F. Supp. 2d at 1372; Fed. R. Civ. P. 72(a). Given Plaintiff's testimony that she would not search, let alone provide, communications concerning her employment and this lawsuit, (*see* Dkt. 199-1 at 9–10, 14–16, 18–21, 27, 34, 38, 40–42, 49–50, 86), the court finds that magistrate judge acted within his broad discretion to order Plaintiff to submit her cell phone for forensic imaging, *see Malibu Media, LLC*, 923 F. Supp. 2d at 1347.

## CONCLUSION

Accordingly:

1.    Plaintiff's objections (Dkt. 209) are **OVERRULED**.

2.    The magistrate judge's order (Dkt. 208) is **AFFIRMED**.

**ORDERED** in Orlando, Florida, on March 31, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record