UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURIE PARKE,

Plaintiff,

v. Case No: 6:23-cv-2221-JSS-NWH

DELTA AIR LINES INC.,

Defendant.
______________________________________/

**ORDER**

Plaintiff, Laurie Parke, and Defendant, Delta Air Lines Inc., move for summary judgment. (*See* Dkts. 233, 235, 238, 240.) The motions are opposed. (*See* Dkts. 236, 237.) For the following reasons, the court grants Defendant's motion for summary judgment (Dkt. 233) and denies Plaintiff's motion for summary judgment (Dkt. 235).

**BACKGROUND**

Hired in 1999, Plaintiff worked for Defendant as a flight attendant until the termination of her employment in May 2022. (Dkt. 220 ¶ 19; Dkt. 222 ¶ 19.) During Plaintiff's employment, the COVID-19 pandemic occurred. (Dkt. 232 ¶ 2.) In response to the pandemic, Defendant implemented several policies for employees who elected not to receive a COVID-19 vaccination, such as requiring unvaccinated employees to test weekly for COVID-19 unless they were approved for an accommodation or exception, charging unvaccinated employees who utilized

Defendant's health insurance benefits a surcharge unless they were approved for an accommodation or exception, and mandating unvaccinated employees wear a mask while working indoors or on a flight. (*Id.* ¶ 4.) Plaintiff did not receive a COVID-19 vaccination. (*Id.* ¶ 3.)

On January 6, 2022, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), asserting that she had experienced disability and genetic history discrimination and retaliation. (*Id.* ¶ 5.) In her charge, Plaintiff alleged that Defendant harassed her based on her unvaccinated status and that Defendant ignored her application for a waiver of the insurance surcharge for unvaccinated employees. (*Id.*) Plaintiff later received a refund of the insurance surcharge in March 2022. (*Id.* ¶ 6.)

On April 18, 2022, Plaintiff was assigned to work on a 5:30 P.M. flight from Boston, Massachusetts, to Detroit, Michigan. (*Id.* ¶ 7.) Earlier that day, a judge in the Middle District of Florida invalidated the mask mandate imposed by the Centers for Disease Control and Prevention (CDC) for public transportation. (*Id.* ¶ 8.) Learning of that ruling, Plaintiff did not wear a mask while inside the Boston airport or when boarding the Detroit-bound airplane. (*Id.* ¶¶ 8–9.) Despite the invalidation of the CDC's mask mandate earlier in the day, Defendant's mask policy, which required employees to wear masks unless they were eating or drinking and were at least six feet away from another person, was still in effect when Plaintiff boarded the airplane. (*Id.* ¶ 10.) Defendant did not rescind its mask policy, making masks optional for customers and employees, until 7:52 P.M. on April 18, 2022. (*Id.* ¶ 14.) According to

Defendant, Plaintiff neither requested nor received permission to board the airplane without a mask. (Dkt. 234-1 at 59.)

Once onboard the airplane, Plaintiff claims, she saw Malik Lockhart, a ramp agent, and she asked Mr. Lockhart what he was doing on the airplane. (Dkt. 235-8 at 2.) Mr. Lockhart then purportedly stood in front of one of the doorways of the airplane and blocked Plaintiff from performing her duties. (*Id.*) According to Plaintiff, she again asked Mr. Lockhart, who was purportedly not wearing a mask, what he was doing on the airplane, and he left without replying. (*Id.*) Later, Mr. Lockhart allegedly came back onto the airplane, stood behind Plaintiff, and photographed her personal belongings. (*Id.*) Plaintiff asserts that Mr. Lockhart's actions again prevented her from doing her duties. (*Id.*) Observing that Plaintiff was not wearing a mask on the airplane and that she had a sign stating "IT'S YOUR RIGHT TO BREATH[E] FREE," Mr. Lockhart reported Plaintiff to Defendant. (Dkt. 232 ¶ 12.)

In response to Mr. Lockhart's report, Alexander Singer, a manager, boarded the airplane, asked Plaintiff where her mask was, and informed her that she needed to wear a mask. (*Id.* ¶ 13.) After debating the issue, Plaintiff eventually relented and put on the mask that Mr. Singer provided for her, but not before she uttered an expletive. (*Id.*) Defendant claims that the discussion between Plaintiff and Mr. Singer delayed the departure of the airplane because the airplane could not depart until Plaintiff wore a mask. (Dkt. 234-5 ¶ 20.) Plaintiff apologized to the passengers over the airplane's announcement system, explaining to the passengers that the airplane was required to

briefly return to the airport gate because she was not wearing a mask. (Dkt. 234-1 at 60.)

After the airplane landed in Detroit, Defendant's management team met with Plaintiff and removed her from the next flight. (Dkt. 232 ¶ 15.) According to Defendant, it received passenger complaints regarding the pre-flight incident with Plaintiff. (Dkt. 234-5 ¶ 20.) Those complaints included passengers objecting that the flight left late, that Plaintiff made a political speech about masks, and that Plaintiff had called some passengers "sheep." (Dkt. 234-5 ¶ 20; Dkts. 234-43, 234-44.)

Following the pre-flight incident on April 18, 2022, Plaintiff submitted a report to Defendant, stating that Mr. Lockhart should not have been on the airplane. (Dkt. 232 ¶ 16.) Patrick Garrett, Plaintiff's manager, investigated Plaintiff's report and her conduct on April 18, 2022. (*Id.* ¶ 17.) During Mr. Garrett's investigation, Plaintiff advised him that she filed a police report regarding Mr. Lockhart's presence on the airplane on April 18, 2022. (*Id.* ¶ 18.)

On April 28, 2022, Defendant suspended Plaintiff's employment without pay while it continued to investigate and review the April 18, 2022 incident. (*Id.* ¶ 19.) The next day, Mr. Garrett recommended terminating Plaintiff's employment for three reasons: (1) refusing to wear a mask during boarding, (2) responding inappropriately to a manager in the presence of customers, and (3) making an inappropriate announcement over the announcement system. (*Id.* ¶ 20.) Before terminating Plaintiff's employment, Defendant offered Plaintiff the opportunity to resign or retire, but Plaintiff refused Defendant's offer. (*Id.* ¶¶ 21–22.)

Subsequent to the termination of her employment, Plaintiff sued Defendant. (Dkt. 1.) In the operative fourth amended complaint, Plaintiff raises three counts: (1) a violation of Florida's Private Sector Whistleblower Act (FPSWA), section 448.102(3), Florida Statutes, (2) negligent retention, and (3) defamation. (Dkt. 220.) Defendant answered Plaintiff's fourth amended complaint, denied liability, and asserted affirmative defenses. (Dkt. 222.)

## APPLICABLE STANDARDS

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When a party "assert[s] that a fact cannot be or is genuinely disputed," the party "must support the assertion by . . . citing to particular parts of materials in the record" or "[by] showing that the materials cited do not establish the absence or presence of a genuine dispute[] or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials" when resolving the motion. Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those

portions of the record showing a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes precluding judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) ("The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." (quotation omitted)). Rather, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))). In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The court will not weigh the evidence

or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party." *Matsushita*, 475 U.S. at 587.

## ANALYSIS

Plaintiff and Defendant both maintain that they are entitled to summary judgment on all counts raised in the fourth amended complaint. (*See* Dkts. 233, 235.) The court will evaluate each count in turn.

### A. Florida Private Sector Whistleblower Act

Under the FPSWA, an employer "may not take any retaliatory personnel action against an employee because the employee" has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). To prevail on a section 448.102(3) claim, a plaintiff must establish that he or she objected to, or refused to participate in, an activity, policy, or practice of the defendant that was "by definition, a violation of a law, rule, or regulation." *Gessner v. S. Co.*, 435 So. 3d 8, 19 (Fla. 2026) (quotation omitted); *see id.* at 12 ("[T]o prevail in a retaliation claim under . . . section 448.102(3), an employee must establish by a preponderance of the evidence that the employer's activity, policy, or practice is in violation of law—that is, it constitutes a violation of the law—not that the employer has already in fact violated the law, nor that the employee reasonably believed the employer violated the law.").

In her briefing, Plaintiff identifies two sets of Defendant's activities, policies, or practices that she contends were in violation of a law, rule, or regulation. (*See* Dkt. 235 at 13–14; Dkt. 237 at 13–18; Dkt. 240 at 4–6.) First, she states that in her January 6, 2022 EEOC charge, she objected to Defendant's COVID-19 policies and practices—"the insurance surcharge, compelled weekly testing, and differential treatment of unvaccinated employees"—as violations of 42 U.S.C. § 12112(d)(4). (Dkt. 235 at 13–14.) Second, she maintains that she objected "in real time" to Defendant's enforcement of its mask policy on April 18, 2022, and to conduct that purportedly interfered with "her performance of safety-sensitive crewmember duties during boarding" in violation of 14 C.F.R. §§ 91.11 and 121.580. (Dkt. 235 at 13.) In addition to objecting in "real time," Plaintiff notes that she reported the purported interference to Defendant, the police, and the EEOC. (*Id.* at 13–14.)

As for the first set of activities, policies, or practices—Defendant's COVID-19 policies and practices—Plaintiff cannot establish that these policies or practices were in violation of 42 U.S.C. § 12112(d)(4). That statute provides that a "covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability," unless "such examination or inquiry is shown to be job-related and consistent with business necessity." *Id.* To qualify as a disability under the ADA, an individual must show "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an

impairment," or that the individual is "regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C).

Absent from Plaintiff's briefing is any caselaw establishing that a COVID-19 infection qualifies as a disability under the ADA. (*See* Dkts. 235, 237, 240.) In fact, courts have found otherwise, ruling that a COVID-19 infection is not a disability under the ADA. *See Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1349 (M.D. Ga. 2021) (explaining that a COVID-19 infection "does not rise to the level of a 'disability' under the ADA"); *Harakal v. Composite Motors, Inc.*, No. 8:22-CV-2192-TPB-JSS, 2022 WL 17782368, at *2 (M.D. Fla. Dec. 19, 2022) ("It would be absurd to hold that any employee who contracted COVID-19 was disabled."); *McCone v. Exela Techs., Inc.*, No. 6:21-CV-912-CEM-DCI, 2022 WL 801772, at *4 (M.D. Fla. Jan. 14, 2022) ("[B]eing infected with COVID-19, standing alone, does not meet the ADA's definitions of disability or impairment." (footnote omitted)). Because a COVID-19 infection does not qualify as a disability under the ADA, a "COVID-19 test is not likely to reveal a disability." *McCone*, 2022 WL 801772, at *4 (quotation omitted). Accordingly, Defendant's COVID-19 policies and practices were not in violation of 42 U.S.C. § 12112(d)(4), and Plaintiff cannot base an FPSWA claim on her objection to those policies and practices.

As for the second set of activities, policies, or practices—the actions of Mr. Lockhart and Mr. Singer before the flight on April 18, 2022—Plaintiff cannot establish that those activities were attributable to Defendant. Plaintiff maintains that Mr. Lockhart and Mr. Singer interfered with her crewmember duties while she was on an

airplane in violation of 14 C.F.R. §§ 91.11 and 121.580. (Dkt. 235 at 14.) These regulations provide that "[n]o person may assault, threaten, intimidate, or interfere with a crewmember in the performance of the crewmember's duties aboard an aircraft being operated." 14 C.F.R. §§ 91.11, 121.580. Even if Mr. Lockhart and Mr. Singer, as employees of Defendant, violated the regulations by their actions on April 18, 2022, the employees' violations would not mean that Defendant, the employer, was in violation of 14 C.F.R. §§ 91.11 and 121.580. *See McIntyre v. Delhaize Am., Inc.*, No. 8:07-CV-2370T30TBM, 2009 WL 1039557, at *3 (M.D. Fla. Apr. 17, 2009) ("A violation of law by an employee as opposed to a defendant employer is irrelevant to, and cannot adequately support, a claim based on the [FPSWA]."); *Douberley v. Burger King Corp.*, No. 8:06CV1844T17EAJ, 2007 WL 1175757, at *4 (M.D. Fla. Apr. 20, 2007) ("Smith's alleged violation of law is irrelevant and inadequate in a claim based on [the FPSWA] because Smith was merely an[] employee. [The p]laintiff failed to allege any violation of law, rule, or regulation by any [*d*]*efendant*-[*e*]*mployer*." (citation omitted)).

Insofar as Plaintiff contends that Defendant ratified the actions of Mr. Lockhart and Mr. Singer, there must be evidence demonstrating that Defendant approved of their actions. *See McIntyre*, 2009 WL 1039557, at *4 (rejecting ratification claim because there was no evidence indicating that the employer approved of the alleged misconduct of an employee). No evidence, however, indicates that Defendant ratified the actions of Mr. Lockhart and Mr. Singer that, Plaintiff alleges, interfered with her crewmember duties. Plaintiff cites Defendant's answer, (Dkt. 240 at 5), which

admitted that Mr. "Lockhart's statement was one of many that informed [Defendant's] investigation of Plaintiff's conduct on April 18, 2022," (Dkt. 222 ¶ 102). This admission fails to demonstrate that Defendant approved of Mr. Lockhart's purported interference with Plaintiff's crewmember duties, and the admission is silent as to whether Defendant approved of the actions of Mr. Singer.

Further, Plaintiff notes that Defendant "investigated and cleared" Mr. Lockhart and did not discipline him for his actions on April 18, 2022, as evidenced by Mr. Garrett's declaration. (Dkt. 237 at 15.) Mr. Garrett's declaration explains that his investigation of Mr. Lockhart was limited to Mr. Lockhart's presence on the airplane on April 18, 2022, and whether Mr. Lockhart violated Defendant's mask policy by not wearing a mask. (*See* Dkt. 234-7 ¶ 31 (stating that ramp agents have authorization to enter an aircraft, that it is not unusual for ramp agents to be on airplanes, and that Plaintiff was the only person to accuse Mr. Lockhart of not wearing a mask).) Mr. Garrett's declaration does not evidence any approval of Mr. Lockhart purportedly preventing Plaintiff from fulfilling her crewmember duties, and it also does not address the actions of Mr. Singer. Accordingly, because there is no evidence that Defendant ratified Mr. Lockhart and Mr. Singer's purported interference of Plaintiff's crewmember duties, Plaintiff cannot establish that she objected to any activity, practice, or policy of Defendant that was in violation of 14 C.F.R. §§ 91.11 and 121.580.

For these reasons, Plaintiff cannot establish an activity, policy, or practice of Defendant that was in violation of a law, rule, or regulation. Consequently, Defendant is entitled to summary judgment on Plaintiff's FPSWA count.

**B. Negligent Retention**

Under Florida law, a negligent retention claim has three elements: (1) the employee was incompetent or unfit to perform the work, (2) the employer knew or reasonably should have known of the particular incompetence or unfitness, and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury. *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 796 (11th Cir. 2017) (quoting *Davies v. Commercial Metals Co.*, 46 So.3d 71, 73 (Fla. Dist. Ct. App. 2010)); *see Ruiz v. Ringling Coll. of Art & Design, Inc.*, 656 F. Supp. 3d 1340, 1350 (M.D. Fla. 2023) ("Negligent supervision and retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicates his unfitness and it fails to take further action such as investigation, discharge, or reassignment." (quotation omitted)). "[W]hen an employer fails to take any corrective action against an employee because the employer has no notice of problems with the employee's fitness, that employer is not liable under Florida law for negligent supervision or retention." *Walton v. Johnson & Johnson Servs. Inc.*, 203 F. Supp. 2d 1312, 1326 (M.D. Fla. 2002).

In her briefing, Plaintiff argues that Defendant negligently retained Mr. Lockhart, Mr. Singer, and unspecified additional employees because Mr. Lockhart invaded her personal privacy by photographing her personal belongings and because

Mr. Lockhart, Mr. Singer, and other employees of Defendant defamed her, (Dkt. 235 at 18; Dkt. 237 at 18–19; Dkt. 240 at 6–7), as discussed in the next subsection. The fatal flaw of Plaintiff's negligent retention claim is that there is no evidence that Defendant knew or should have known that its employees were purportedly unfit for their jobs prior to the incidents at issue.

Essentially, Plaintiff contends that Defendant knew or should have known that its employees were unfit for their jobs based on the misconduct that she alleges injured her rather than based on anything occurring before the alleged misconduct. The prior notice of unfitness necessary to hold an employer liable for negligent retention requires that an employer have actual or constructive notice of an employee's unfitness before the misconduct alleged to have injured a plaintiff. *See Watts v. City of Hollywood, Florida*, 146 F. Supp. 3d 1254, 1269 (S.D. Fla. 2015) (explaining that an employer must have "actual or constructive notice [of] its" employees' unfitness "prior to the incident at issue"); *Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269, 1276 (S.D. Fla. 2013) ("[A]ny alleged negligence by the crewmembers in the case at bar cannot sustain [the plaintiff's] claim, as it would not establish prior notice of unfitness to [the crewmember's employer]."); *see also Dep't of Env't Prot. v. Hardy*, 907 So. 2d 655, 661 (Fla. Dist. Ct. App. 2005) ("There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee."). Accordingly, without any prior knowledge of the alleged unfitness of its employees, Defendant cannot be liable for negligent retention. *See Walton*, 203 F. Supp. 2d at 1326. Further, insofar as Plaintiff argues that she has continued to be

harmed by the defamation of Defendant's employees, including after the termination of her employment, (*see* Dkt. 235 at 18), there is no merit to Plaintiff's argument because Defendant is not liable for defamation, as explained in the next subsection. For these reasons, Defendant is entitled to summary judgment on Plaintiff's negligent retention count.

**C. Defamation**

Under Florida law, defamation generally has five elements: "(1) publication[,] (2) falsity[,] (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person[,] (4) actual damages[,] and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Florida law recognizes several forms of defamation, with each form slightly varying what must be proven. These forms include defamation per se, which recognizes that some statements are so harmful that they are presumed by law to be defamatory and which does not require proof of special damages; defamation per quod, which necessitates extrinsic proof to understand the defamatory nature of a statement; and defamation by implication, which concerns instances where true statements are conveyed in a manner designed to create a false impression. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (explaining defamation by implication); *Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 633 (Fla. Dist. Ct. App. 1983) (discussing defamation per se and defamation per quod). Despite these slight variances, the publication element is central to every form of defamation. *See Hullick v. Gibraltar Priv. Bank & Tr. Co.*, 279

So. 3d 809, 812 (Fla. Dist. Ct. App. 2019) ("It is undisputed that an essential element of a defamation claim is publication to a third party. A defamatory statement does not become actionable until it is published or communicated to a third person; statements made to the person alleging defamation do not qualify." (alteration adopted) (footnote, citation, and quotation omitted)).

For publication purposes, Florida law considers statements made within a corporation among the executive and managerial employees to be statements that the corporation makes to itself. *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007) ("When the entity alleged to have committed the defamation is a corporation, the courts have held that statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself . . . ."). Such intra-corporate statements thus "lack the essential element of publication." *Id.*; *see Clowdus v. Am. Airlines, Inc.*, No. 22-14053, 2023 WL 5011731, at *4 (11th Cir. Aug. 7, 2023) (concluding that incident reports disseminated to an airline's corporate security team for formal investigation were no more than "the corporation internally talking to itself," despite the plaintiff's conclusory labeling of the recipients as "non-managerial"); *Hullick v. Gibraltar Priv. Bank & Tr. Co.*, 279 So. 3d 809, 812 (Fla. Dist. Ct. App. 2019) (explaining that certain intra-corporate communications are not considered published because "courts have employed the legal fiction that the party hearing or seeing the purported defamation is so closely connected with the potential defamation plaintiff or defendant that they merge into a

single entity, so there is no publication to a 'third person' necessary to the cause of action").

Here, Plaintiff contends that Defendant defamed her through six communications: (1) Mr. Singer's April 18, 2022 incident report, (Dkt. 235-1); (2) Mr. Lockhart's report, (Dkt. 234-42); (3) the incident report of Jeff Hopfensperger, (Dkt. 235-13); (4) Mr. Garrett's April 20, 2022 investigation summary, (Dkt. 235-12); (5) the termination memoranda, (Dkt. 235-4; Dkt. 235-6); and (6) a Telegram post Defendant's IT manager posted on a private Telegram chat, (Dkt. 235-9). (Dkt. 235 at 19–20.) The first five of these communications are not defamatory as a matter of law because there is no evidence that they were published. Plaintiff does not cite any evidence demonstrating that the first five communications were transmitted outside of Defendant's executive and managerial employees. (*See, e.g.*, Dkt. 235 at 20.) Instead, Plaintiff contends that the communications were circulated to "individuals outside [her] supervisory chain and outside the group of decisionmakers." (*Id.* at 10, 11, 20.) Even if the employees who received the first five communications were outside of Plaintiff's immediate supervisory chain and the group of decisionmakers reviewing the April 18, 2022 incident, it does not follow that those individuals were not Defendant's executive and managerial employees. In fact, the deposition testimony of Defendant's corporate representative indicates that the employees involved with the investigation of the April 18, 2022 incident held managerial or supervisory positions. (*See* Dkt. 234-6 at 5–6 (explaining the various managers and supervisors involved with the investigation of the April 18, 2022 incident).) Absent any evidence that the recipients

of the first five communications were not executive or managerial employees of Defendant, Plaintiff has failed to establish that there was a publication of the first five communications.

As for the sixth communication—the Telegram post by Defendant's IT manager—there is evidence suggesting that the post was published to third parties outside of Defendant's executive and managerial employees. (*See* Dkt. 235-9 (Telegram post to a "Fearless Flyers" group consisting of 1,389 members).) Nonetheless, there is no evidence establishing Defendant's liability for any defamatory statements in the post. "To find a defendant corporation liable for defamation by its employee, a plaintiff must show that the employee was acting at the time within the scope of his employment and used the defamatory statements in the actual performance of his duties." *Jeanniton v. Costco Wholesale Corp.*, No. 26-CV-22359, 2026 WL 2221501, at *8 (S.D. Fla. Aug. 3, 2026) (citing *Hooper-Holmes Bureau v. Bunn*, 161 F.2d 102, 104 (5th Cir. 1947); *Baker v. Atl. Coast Line R.R. Co.*, 192 So. 606 (Fla. 1939)); *see Hooper-Holmes Bureau*, 161 F.2d at 104 ("The defamatory statements made by a[n employee] only for his own purposes, although made during a transaction in which the [employee] is acting for the corporation, does not subject the corporation to liability."). "An act of [an employee] is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed." *Tallahassee Furniture Co. v. Harrison*, 583 So. 2d 744, 758 (Fla. Dist. Ct. App. 1991) (alteration and quotation omitted).

As Plaintiff herself states, Defendant's IT manager posted the Telegram post to a private chat, not a work-related chat, (Dkt. 235 at 20), and there is no evidence demonstrating that Defendant's IT manager was acting within the scope of his employment when he shared the post on the private chat or that the Telegram post was part of the performance of the duties of Defendant's IT manager. Accordingly, Defendant cannot be liable for any defamatory statements in the Telegram post of its IT manager.

Plaintiff cannot satisfy the publication element of her defamation claim because the allegedly defamatory statements were part of intra-corporate communications or were made outside the scope of employment. As a result, Defendant is entitled to summary judgment on Plaintiff's defamation count.

## CONCLUSION

Accordingly:

1. Defendant's motion for summary judgment (Dkt. 233) is **GRANTED.**
2. Plaintiff's motion for summary judgment (Dkt. 235) is **DENIED.**
3. The Clerk of Court is **DIRECTED** to enter judgment accordingly, terminate all deadlines, deny any pending motions as moot, and close this case.

**ORDERED** in Orlando, Florida, on November 19, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of record